(91 South. 576)

**BELL v. BLACKSHEAR et al.   (4 Div. 904.)**

(Supreme Court of Alabama.   Nov. 3, 1921.
Rehearing Denied Nov. 24, 1921.)

**1. Deeds ⬅207—Deed held not forged..**

In an action by an administrator to declare a deed alleged to be executed by his decedent a forgery, evidence *held* to show a valid execution.

**2. Vendor and purchaser ⬅281(3)—No vendor's lien reserved to secure consideration.**

In an action by an administrator to declare a deed executed by decedent to be a forgery, or, in the alternative, to declare that the purchase money had not been paid, evidence *held* to show that grantor did not reserve a lien upon the property to secure consideration expressed.

**3. Appeal and error ⬅1012(1)—Finding not disturbed on appeal unless contrary to great weight of evidence.**

Where the evidence was ore tenus, the finding of the trial court will not be disturbed on appeal unless the conclusions are plainly contrary to the great weight of evidence.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Bill by J. D. Chason, as executor of the last will and testament of J. A. B. Sykes, against Annie C. Blackshear and another, to declare a deed a forgery, or in the alternative, to declare a vendor's lien under the deed. The executor having died, the cause was revived in the name of H. C. Bell, as administrator de bonis non. There was judgment for the respondents, and complainant appeals. Affirmed.

Farmer, Merrill & Farmer, of Dothan, and T. S. Hawes, of Bainbridge, Ga., for appellant.

Counsel discuss the evidence at length, with the insistence that under the well-known rules the deed must be declared a forgery.

Reid & Doster, of Dothan, for appellees.

Counsel discuss the evidence fully, with the insistence that the court heard the evidence, and that its opinion and decision will not be disturbed, unless its conclusion is clearly erroneous.

MILLER, J.   R. D. Blackshear owned certain real estate in Dothan, Houston county,

Ala. There were three mortgages on this property given by R. D. Blackshear and his wife; one to R. H. Ramsey, one to Dothan Foundry & Machine Company, and one to the First National Bank of Dothan. These three mortgages were foreclosed, and the property in them sold, on July 8, 1915, under the power of sale in each, and the First National Bank of Dothan was the purchaser for the sum of $21,475.23, the aggregate amount of the three mortgage debts. Foreclosure deeds were made to the bank. A part of this property, a house and lot, was sold afterwards by the bank to L. A. Farmer for $4,000.

R. D. Blackshear was financially unable to redeem the property within the time the law allows. His first cousin, Dr. J. A. B. Sikes, of Iron City, Ga., came to Dothan and paid the First National Bank on June 1, 1917, the sum of $17,475.23, the amount necessary to redeem the property after the said $4,000 had been credited on the purchase price at foreclosure. A deed conveying the balance of the property to Dr. Sikes was executed by the bank.

A vacant lot of this property was sold and conveyed on July 26, 1917, to C. E. Segrest for $4,000. The deed to Segrest was executed by Dr. Sikes, R. D. Blackshear, and his wife. The $4,000 was paid to Dr. Sikes, and credited on the $17,475.23, the redemption money debt paid to the bank. It is clear—practically undisputed—that Dr. Sikes did not intend to own, by the purchase and deed from the bank, this real estate, but paid the amount due to aid his first cousin, and to thereby permit him more time than the statute allowed to redeem.

On August 10, 1917, Dr. R. D. Blackshear wrote Dr. Sikes a letter. Dr. Blackshear then resided in Panama City, Fla. This letter requested that he (Sikes) send him all the papers given him by the bank, as he wished to show them to a lawyer employed to sue the bank for usurious interest collected. This letter also contained this in connection with the property:

"I had just as soon all I have was in your name as my own, as long as I know I know it would be all right, for I know you would do the right thing, and would be a good guardian for my family or me, so it might be well enough for you to give me some simple showing, not to be recorded until I can pay up, when I get paid up, I want it made to my wife, so if you think well of my argument and should make any statement make it in favor of my wife, when I pay up. I am merely writing in a suggestive way, it will suit me to let it stand."

There is a deed conveying this property to Mrs. Anna C. Blackshear (wife of Dr. R. D. Blackshear) dated August 27, 1917, for recited cash paid consideration of $13,250, signed by J. A. B. Sikes, attested by W. J. Blackshear and P. M. Carlisle, and acknowledged before P. M. Carlisle, a notary public of Panama City, Fla. The deed was filed for record in the probate office of Houston county, Ala., on October 29, 1917. Dr. Sikes was 65 years of age. He was suffering with cancer of the throat. On September 27, 1917, he executed his last will and testament. Having no lineal descendants, he bequeathed all of his property to his three sisters, share and share alike. He went to a hospital to be operated on, and died September 30, 1917. His estate is estimated to be worth over $170,000.

J. D. Chason, the executor of the estate of J. A. B. Sikes, filed this bill of complaint. The executor died, and it was revived in the name of H. G. Bell, as administrator de bonis non. Mrs. Anna C. Blackshear, and her husband, R. D. Blackshear, are the defendants. The bill alleges that the deed dated August 27, 1917, of J. A. B. Sikes to Anna C. Blackshear is a forgery; that R. D. Blackshear did it, or caused it to be done. The primary object of the bill is to have this deed declared a forgery, and therefore null and void, and, if it is not a forgery, then to declare that the purchase money has not been paid, and that complainant has a vendor's lien therefor on the property. The respondents deny that the deed is a forgery, and they deny that complainant has any vendor's lien on the land or any part thereof, or any other right, claim, or interest in the land.

[1] This is the first question in this case: Is the deed dated August 27, 1917, from J. A. B. Sikes to Anna C. Blackshear a forgery? If it is, it is null and void, and should be so declared. If it is not a forgery, then we have this question: Has complainant a vendor's lien on the property for the consideration named in the deed? These questions can and must be answered from the evidence.

Chief Justice Anderson, in Finney v. Studebaker Corp. of Am., 196 Ala. 422, 72 South. 54, wrote:

"The evidence was ore tenus, or partly so, the trial court saw and heard the witnesses, and had an advantage over this court in considering and weighing the evidence, and we would not disturb the conclusion unless plainly contrary to the great weight of the evidence."

In Thompson v. Collier, 170 Ala. 469, 54 South. 493, this court said:

"But the trial court had facts and circumstances before it not available to us; the evidence being in part ore tenus. He saw and heard some of the witnesses, and could observe their demeanor upon the stand, and his conclusion upon the facts will not be disturbed, unless it is plainly erroneous."

In Cook v. Atkins, 173 Ala. 363, 56 South. 224, Justice Sayre wrote for the court:

"The formal acknowledgment in the deed of the receipt of the consideration for the conveyance does not conclude the grantor or those claiming under him, if in fact the purchase

price remains unpaid. * * * Equity. raises the lien by implication, unless there is satis-factory evidence of a purpose to exclude it, and the vendee who resists its enforcement assumes the burden of showing that it has been inten-tionally displaced or waived by the consent of parties."

Many witnesses testify they knew the handwriting and signature of Dr. Sikes. Some say in their opinion the signature to the deed is genuine, and many say in their opinion it is not. Some expert witnesses compared the signature to the deed with ad-mittedly genuine signatures, and express their opinion that they are not the same; that the one to the deed is not genuine. There are circumstances in the evidence that might bias the opinion of some of these witnesses, even some of the experts. The original deed and many of the admitted signatures are be-fore us. There is a striking similarity be-tween all of them; and there are some mark-ed differences between many of them, even between the undisputed signatures. The two subscribing witnesses to the deed—one a cousin of Dr. Sikes, and brother of Dr. Black-shear, and the other no kin to either party, and the notary public—were examined oral-ly before the court. Judge Middleton and J. D. Blackshear were also examined ore tenus before the court. He heard them. He saw them. The testimony of these four wit-nesses clearly indicated that Dr. Sikes sign-ed the deed—gave the property to Mrs. Blackshear, so her husband's creditors could not trouble it, and where he and his estate could not recover it.

The trial court heard 27 witnesses testify in this case. The complainant had 14, de-fendant 13, as shown by the decree. The most material witnesses who testified to sa-lient points in the cause were seen and heard by the court, and he names each one of the 27 witnesses in the decree, who gave their evi-dence before him. There were witnesses ex-amined orally before the register whose tes-timony tends to disprove the evidence of the subscribing witnesses to the deed; but there were other witnesses before the court whose oral testimony corroborated the subscribing witnesses.

Dr. Sikes and Dr. Blackshear were warm, personal friends. They were first cousins. Their relation by blood, friendship, and asso-ciation was intimate, close, and cordial. The frequent and lengthy letters passed between them evidences their warm feeling for each other. This land transaction with the bank was entered into by Dr. Sikes on account of his friendship for and to assist his cousin in his financial troubles. Dr. Sikes had no wife and no children. He had accumulated quite a fortune. His cousin, Dr. Black-shear, had been unfortunate financially. Dr. Sikes was 65 years old. He had cancer of the throat. He was very hoarse from the dis-

ease. It seems he realized his condition—that he could not live long—and on Septem-ber 27, 1917, he willed and bequeathed all of his property to his three sisters, share and share alike. In this way he provided for them. He went to a hospital for treatment, and died on or about September 30, 1917. On the 26th and 27th of August, 1917, he was in Panama City to see his cousin and friend, Dr. Blackshear, in response, no doubt, to the letter dated August 10, 1917, quoted from heretofore in this opinion. There is evidence strongly indicating that Dr. Sikes, while in Panama City on this visit, gave this prop-erty to his cousin's wife, so her husband's creditors could not trouble it, and canceled the debt due him for it by her husband, and thus provided for his friend and cousin.

[2, 3] The learned and able trial judge, who heard many of the witnesses testify, no doubt reached this conclusion, for he de-creed that J. A. B. Sikes executed to Anna C. Blackshear the deed dated August 27, 1917, and "did not reserve a lien upon the property described therein to secure the con-sideration as expressed therein." We can-not say from the evidence in the case he was clearly wrong—that his conclusions were plainly contrary to the great weight of the evidence. It appears to us from this evi-dence that his conclusions are correct; and this decree rendered by his court is approved and affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.